IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAUDRIAN POWELL, <br><br> Plaintiff, <br><br> v. <br><br> ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, <br><br> Defendant. | CIVIL ACTION <br> NO. 13-5721 |

**OPINION**

**Slomsky, J.**                                                                 **July 21, 2014**

**I.     INTRODUCTION**

The present action arises from a car accident that occurred on March 5, 2011, when a car driven by Shawn K. Smith rear-ended a 1998 Volvo V70 that belonged to Maudrian Powell ("Plaintiff"). Smith's car was not covered by insurance at the time of the accident. On September 30, 2013, Plaintiff filed the Complaint in this case, asserting an Uninsured Motorist ("UM") Claim against her insurer, Allstate Property and Casualty Insurance Company ("Allstate" or "Defendant"). (Doc. No. 1.)

On January 10, 2014, Allstate tendered to Plaintiff $25,000 of UM coverage, which Plaintiff accepted in settlement of the case, believing at the time that it was the full amount of UM coverage under the policy. The same day, after receiving notice that the matter was resolved, the Court entered an Order dismissing the case as settled. (Doc. No. 9.) On February 4, 2014, Plaintiff timely filed a timely Motion to Strike the Court's Order of Dismissal,[1] arguing

---

[1] The Local Rules of Court explains that "[a]ny such order of dismissal may be vacated, modified, or stricken from the record, for cause shown, upon the application of any party served within ninety (90) days of the entry of such order of dismissal." Local R. Civ. P. 41.1(b).

that she was actually entitled to $50,000 of coverage.  (Doc. No. 12.)  The Court granted Plaintiff's Motion to Strike as unopposed and reinstated the above-captioned case.  (Doc. No. 13.)

On March 19, 2014, the Court held a pretrial conference with counsel for the parties.  At the conference, counsel agreed that the issue of Plaintiff's ability to collect uninsured motorist ("UM") coverage could be resolved through summary judgment.  On April 8, 2014, the parties submitted a Joint Statement of Undisputed Facts.  (Doc. No. 18.)  Thereafter, on April 17, 2014, Allstate filed its Motion for Summary Judgment.  (Doc. No. 19.)  Plaintiff opposes the Motion.  (Doc. No. 20.)  The Motion is now ripe for disposition by the Court.  For the reasons that follow, the Court will grant Allstate's Motion for Summary Judgment.[2]

## II.    BACKGROUND

The following facts are taken from the parties' Joint Statement of Undisputed Facts (Doc. No. 18) and will be accepted as true for purposes of deciding Allstate's Motion for Summary Judgment.

> This case arises from a March 5, 2011 motor vehicle incident which occurred at the intersection of 19th Street and Ogontz Avenue in Philadelphia, Pennsylvania.
>
> Plaintiff, Maudrian Powell, was the operator of a motor vehicle traveling northbound on Ogontz Avenue, stopped at or near the intersection of 19th Street, in Philadelphia.
>
> At the same time and place, the tortfeasor, Shawn K. Smith, was the operator of a motor vehicle traveling at or near the above-mentioned intersection and rear-ended Plaintiff.

---

[2] In reaching its decision, the Court has considered the following: the parties' Joint Statement of Undisputed Facts (Doc. No. 18), Defendant's Motion for Summary Judgment (Doc. No. 19), Plaintiff's Response in Opposition (Doc. No. 20), Defendant's Reply in Further Support of the Motion (Doc. No. 21), and all related filings and exhibits.

At the time of the accident, Maudrian Powell was insured through Allstate Property and Casualty Insurance Company ("Allstate") under policy number 9087748060927.

On or about October 15, 2012, Plaintiff filed a Civil Action Complaint in the Court of Common Pleas of Philadelphia County against defendant/tortfeasors, sounding in negligence.

Plaintiff additionally filed a Civil Action Complaint in the Eastern District of Pennsylvania against Allstate Property and Casualty Insurance Company, sounding in uninsured motorist and underinsured motorist claims.

On October 16, 2013, Plaintiff filed a Praecipe to Defer [the case filed in] the Pennsylvania Court of Common Pleas, Philadelphia County.

On or about November 21, 2013 Defendants Answered Plaintiff's Complaint [filed in the instant case].

Defendant tendered $25,000 of Uninsured Motorist coverage on January 10, 2014.

Plaintiff accepted the policy limits of $25,000 and Plaintiff's Counsel wrote the court to have the matter marked settled and discontinued.

Plaintiff's counsel subsequently filed a Motion to Strike the Discontinuance on the basis that Plaintiff believes she is entitled to stacked $25,000/$50,000 limits with two cars on her policy and avers she is entitled to $50,000 in UM/UIM[3] coverage on the date of the loss.

Allstate maintains that Plaintiff is only entitled to $25,000 in UM/UIM coverage.

On September 16, 2005, the named insured Dennis Powell signed a Rejection of Stacked Uninsured and Underinsured Coverage Limits.

After the named insured signed the stacked limits waiver the Powells were insured under their Allstate policy for three vehicles: 1) 2002 Nissan Altima, 2) 2000 Nissan Maxima and 3) 1999 Nissan Altima. The policy was valid from 9/27/2005 through 3/27/2006. Later the 2002 Nissan Altima was replaced on the policy [with] a 2006 Nissan Altima.

During the policy period from 3/27/2007 through 9/27/2007, the Powells added a fourth vehicle to their policy: a 1998 Volvo V70. Correspondence was sent to the Powells stating this [sic] this policy change of adding the 1998 Volvo V70 took

---

[3] "UM" refers to uninsured motorist, while "UIM" denotes underinsured motorist.

3

> effect on 7/21/2007. The correspondence indicates that the premium for the policy period was increased by $167.92.
>
> Plaintiff contends that a new stacking waiver should have been presented to the Powells by Allstate when this fourth vehicle was added to the policy. Allstate disputes this position.
>
> Thereafter, Plaintiff dropped the 2006 Nissan from the policy. The policy change was effective 10/27/2007 and as of that date the three vehicles on the policy included the 2000 Nissan Maxima, the 1999 Nissan Altima and the 1998 Volvo V70.
>
> On 10/28/2008 the Powells deleted from the policy the 1999 Nissan Altima and had just two vehicles on the policy: a 2000 Nissan Maxima and a 1998 Volvo V70.
>
> These same two vehicles were renewed for policy period 3/27/2009 through 9/27/2009, as well as 9/27/2009 through 3/27/2010, then again from 3/27/2010 through 9/27/2010, and 9/27/2010 through 3/27/2011.
>
> The subject accident occurred on March 5, 2011 when there were two vehicles on the Allstate policy.
>
> At the time of the accident and at all relevant times Allstate insured all of the autos that were owned by the Powells.

(Doc. No. 18 at ¶¶ 1-21) (internal citations omitted).

### III.   STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010) (quotation omitted)). A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Kaucher v. Cnty. of

4

Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). For a fact to be considered "material," it "must have the potential to alter the outcome of the case." Favata, 511 F. App'x at 158. Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. (quoting Azur, 601 F.3d at 216 (internal quotation marks omitted)).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (quoting Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009) (quotation omitted)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson, 477 U.S. at 247–249. Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party. Id. at 255. If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. Id. at 250.

**IV.   ANALYSIS**

In this automobile insurance dispute, the Court must follow the rules of stacking[4] of UM coverage under the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. Cons. Stat. Ann. § 1701 et seq. In Pennsylvania, the general rule is that UM/UIM benefits

---

[4] "The basic concept of stacking is the ability to add the coverages available from different vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy." Sackett v. Nationwide Mut. Ins. Co., 919 A.2d 194, 196 n.3 (Pa. 2007) ("Sackett I") (quoting McGovern v. Erie Ins. Grp., 796 A.2d 343, 344 (Pa. Super. Ct. 2002)).

5

may be stacked. 75 Pa. Cons. Stat. Ann. § 1738(a).[5] This means that in the event of a loss, an insured is entitled to recover the sum total of coverage for each car on the policy. For instance, if each car is insured for $30,000, an insured with two cars on her policy would be entitled to $60,000 of stacked benefits. Because stacking generally comes with higher premiums, however, an insured may waive the stacking of coverage. 75 Pa. Cons. Stat. Ann. § 1738(b).[6]

In fact, Pennsylvania law mandates that:

> Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

75 Pa. Cons. Stat. Ann. § 1738(c). The MVFRL also includes a standard waiver form for insurers to provide to insureds. See 75 Pa. Cons. Stat. Ann. § 1738(d).

In this case, Plaintiff argues that because Allstate did not obtain a signed stacking waiver from her each time she and her husband added a new vehicle to their automobile insurance

---

[5] The statute provides as follows:

> When more than one vehicle is insured under one or more policies providing [UM/UIM] coverage, the stated limit for [UM/UIM] coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

75 Pa. Cons. Stat. Ann. § 1738(a).

[6] This provision states that:

> [A] named insured may waive coverage providing stacking of [UM/UIM] coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

75 Pa. Cons. Stat. Ann. § 1738(b).

policy, Allstate is required to pay her $50,000 in stacked UM benefits, since two cars were insured under the policy at the time of the accident. Allstate contends that it was under no such obligation, and Plaintiff is limited to recovering $25,000 in UM benefits, which represents coverage for one car only. In Pennsylvania, the Sackett trilogy of cases delineates when insurers must provide stacking waivers to insureds. Thus, this Court's analysis begins there.

### A.     The Sackett Trilogy

In Sackett v. Nationwide Mut. Ins. Co., 919 A.2d 194 (Pa. 2007) ("Sackett I"), the Pennsylvania Supreme Court decided whether state law "require[s] automobile insurers to provide first named insureds the opportunity to waive the stacked limits of [UM/UIM] coverage for each instance an insured purchases UM/UIM coverage by adding a vehicle to an existing policy[.]" Id. at 196. Looking at the language of 75 Pa. Cons. Stat. Ann. § 1738(c), the Court noted that the statute "makes it clear that an insurer must provide a stacking waiver each time a new vehicle is added to the policy because the amount of coverage that may be stacked increases." Id. at 202. Therefore, the Court held:

> When a new car is added to an existing policy and UM/UIM coverage is purchased[,] insurers must provide new Section 1738(d) stacking waivers in order to permit the insured to waive the increased amount of available stacked UM/UIM coverage.

Id. at 196-97. Because the Sacketts, the insureds, did not sign another stacking waiver when they added a third car to their insurance policy, they were entitled to $300,000 in stacked coverage.[7] Id. at 203. After Sacket I was decided, Nationwide, the insurer, filed an application for reargument.

---

[7] Each car was insured for $100,000.

While Nationwide's application for reargument was pending, the Pennsylvania Supreme Court invited the Insurance Commissioner[8] to file an amicus statement. In his statement, which the Court afforded "substantial deference," the Insurance Commissioner disagreed with <u>Sackett I</u>'s "central conclusion that that the addition of a new vehicle to an existing multi-vehicle policy unambiguously constitutes a new purchase of coverage." <u>Sackett v. Nationwide Mut. Ins. Co.</u>, 940 A.2d 329, 331 (Pa. 2007) ("<u>Sackett II</u>"). The Commissioner explained that cars are generally added to existing policies under "newly acquired vehicle" clauses, which:

> [E]xplicitly permit[] consumers to extend existing coverage, with the same applicable types of coverage and limits, to new and/or substitute vehicles, with coverage applying automatically upon acquisition, subject to various conditions, including a requirement of timely subsequent notice to the insurer.

<u>Id.</u> Therefore, the policy's original stacking waiver would equally apply to any car that was added to the insurance policy through this type of clause.[9]

Given the Insurance Commissioner's explanation, the Pennsylvania Supreme Court determined that the "purchase" of UM/UIM coverage under § 1738(c) is a term of art in the automobile insurance industry. <u>Id.</u> at 333. It does not include the addition of a new car to a policy when the car is added to the policy pursuant to a newly acquired vehicle clause. <u>Id.</u> The Court also noted that newly acquired vehicle clauses can vary from policy to policy. <u>Id.</u> There are those that afford closed-term or finite coverage solely during the reporting period. <u>Id.</u> For example, a newly acquired vehicle clause might only cover the new car for the first thirty days after its acquisition. <u>See, e.g.</u>, <u>Bird v. State Farm Mut. Auto. Ins. Co.</u>, 165 P.3d 343 (N.M. Ct. App. 2007). At that point, the car owner must request coverage for the new car and pay the

---

[8] The Insurance Commissioner is a cabinet-level official charged with the administration and enforcement of the MVFRL. <u>Sackett II</u>, 940 A.2d at 330.

[9] Newly acquired vehicle clauses are also referred to as "after acquired vehicle" clauses.

appropriate premium. There are also newly acquired vehicle clauses that contemplate continuing coverage and extend coverage to new cars throughout the existing policy period, beyond the reporting period.[10] With this distinction in mind, the Court modified its holding from Sackett I as follows:

> We hold that the extension of coverage under an after-acquired-vehicle provision to a vehicle added to a pre-existing multi-vehicle policy is not a new purchase of coverage for purposes of Section 1738(c), and thus, does not trigger an obligation on the part of the insurer to obtain new or supplemental UM/UIM stacking waivers. However, where coverage under an after-acquired-vehicle clause is expressly made finite by the terms of the policy, Sackett I controls and requires the execution of a new UM/UIM stacking waiver upon the expiration of the automatic coverage in order for the unstacked coverage option to continue in effect subsequent to such expiration.

Id. at 334 (internal citation omitted). Consequently, the Pennsylvania Supreme Court remanded the case to the lower courts to interpret the newly acquired vehicle clause in the Sackett's policy. After a bench trial, the trial court determined that the Sacketts were entitled to stacked benefits, and the Superior Court of Pennsylvania affirmed the decision on appeal. Sackett v. Nationwide Mut. Ins. Co., 4 A.3d 637 (Pa. Super. Ct. 2010) ("Sackett III").

In Sackett III, the Superior Court examined the newly acquired vehicle clause, which stated that coverage would only apply to a new car during the first thirty days after its acquisition, as long as the Sacketts did not have "other collectable insurance." Id. The Sacketts purchased a new car on July 19, 2000, and on July 26, 2000, Nationwide issued a corrected declarations/endorsement page, reflecting the addition of the new car to their existing policy. Id.

---

[10] By way of an example, the Pennsylvania Supreme Court cited Satterfield v. Erie Ins. Prop. & Cas., 618 S.E.2d 483 (W. Va. 2005). The policy in Satterfield included a newly acquired vehicle clause that expressly extended coverage to autos acquired during the existing policy period. Id. at 485. The clause also imposed a condition that the insured tell the insurer about any new cars acquired during that time. Id.

at 638.  Despite conceding that coverage had been added by this endorsement[11] rather than the newly acquired vehicle clause, Nationwide did not present the Sacketts with a new stacking waiver.  Id. at 640 n.3.  Therefore, with Sackett II in mind, the Superior Court held as follows:

> In this case, at the time of the accident, the Sacketts' Ford Windstar was not covered on the original policy pursuant to an after-acquired vehicle clause.  The record reveals that the relevant after-acquired vehicle clause in the existing policy was strictly a default measure, applying only in the event that the Sacketts "did not have other collectable insurance."  However, prior to the accident, the Sacketts added coverage for the Ford Windstar on their existing policy through an endorsement.  The Sacketts, therefore, obtained "collectable insurance" on the Ford Windstar that was independent of the automatic coverage offered in the after-acquired vehicle clause.  Consequently, when the Sacketts purchased coverage for the Ford Windstar pursuant to an endorsement, the after-acquired vehicle clause in the policy was rendered inapplicable in accordance with its plain language.  See Barnard v. Fireman's Fund Ins. Co., 996 F.2d 246, 249 (10th Cir. 1993) (collecting and discussing cases) (stating that once specific insurance is purchased on a newly-acquired vehicle, the vehicle is no longer considered to be covered under an after-acquired contract clause).  In short, after the Sacketts added the Ford Windstar to the policy by way of an endorsement, the Ford Windstar was covered under the general terms of the policy and not its after-acquired vehicle clause.

Id. at 640.  Although the Superior Court began its analysis by looking at the policy's newly acquired vehicle clause, the court found the clause to be inapplicable because the Sacketts added the car to the insurance policy through a corrected declarations/endorsement page which "nullified any coverage that [they] may have had under [the] after-acquired vehicle clause."  Id. at 641.  See also Bumbarger v. Peerless Indem. Ins. Co., 2014 PA Super 115, *4 (June 6, 2014) (finding that newly acquired vehicle clause did not apply, and therefore, new stacking waiver was required when additional car was added by endorsement at the time of purchase).[12]  Because

---

[11] An endorsement is an amendment to an insurance policy or a rider.  Black's Law Dictionary 644 (10th ed. 2014).  In this case, Plaintiff contends that the issuance of an Amended Declarations Page constituted an endorsement.  (Doc. No. 20 at 11.)

[12] It is worth noting that in Bumbarger, the Superior Court urged the Pennsylvania Supreme Court to clarify why there should be a different outcome in a case where an insured adds a

the car was not added pursuant to a newly acquired vehicle clause, Sackett I controlled. Id. Therefore, the Sacketts were entitled to stacked benefits because Nationwide had not presented them with a new stacking waiver when they added the car to their existing policy.

    **B.    Allstate is Entitled to Judgment as a Matter of Law**

In this case, the parties dispute which Sackett case controls. Allstate contends that the policy's newly acquired vehicle clause automatically extended coverage to the 1998 Volvo V70 (the "Volvo"). (Doc. No. 19 at 19.) Furthermore, pursuant to Sackett II, the continuous applicability of the clause did not require Allstate to provide Plaintiff with a new stacking waiver when she added the Volvo. (Id. at 19-20.) Therefore, the original stacking waiver was in effect, and stacking should not be permitted. On the contrary, Plaintiff contends that the Volvo was not added to the policy pursuant to the newly acquired vehicle clause. (Doc. No. 20 at 10.) Instead, like the Superior Court found in Sackett III, she asserts that the Volvo was added to the policy by way of an endorsement. (Id.) According to Plaintiff, because the Volvo was not added pursuant to the newly acquired vehicle clause, a Sackett II analysis is unnecessary, and Sackett I controls. (Id. at 10-11.) Consequently, Plaintiff contends that because Allstate did not give her a new stacking waiver when she added the Volvo, she is entitled to stacked benefits.

Facing a similar issue on appeal, the Superior Court of Pennsylvania recently noted:

> [W]hen a court is faced with analyzing the precise issue posed by the parties in the instant case, it must focus on the following: (1) how was the "new" vehicle added onto the existing automobile policy (i.e., via endorsement or newly acquired auto clause); and (2) what is the specific language of the relevant clauses found in the applicable insurance policy? It is only after we answer these two questions, that we can determine whether an insurer is obligated to have its insured sign new UM/UIM stacking waivers or suffer the default to stacking such coverage.

---

new car onto a policy through endorsement versus a newly acquired automobile clause. 2014 PA Super 115 at *6 n.8.

Bumbarger, 2014 PA Super 115 at *4.  Because Sackett II only applies if the Volvo was added onto Plaintiff's policy via the newly acquired vehicle clause, this question must first be answered before turning to the clause itself.

        **1.**      **Sackett II Controls Because the Volvo was Automatically Added to Plaintiff's Policy Via the Newly Acquired Vehicle Clause**

As noted above, Allstate asserts that the Volvo was automatically added to Plaintiff's policy through the newly acquired vehicle clause, and thus, Sackett II governs.  (Doc. No. 19 at 19.)  Plaintiff contends, however, that any Sacket II analysis is unnecessary because the Volvo was not added pursuant to a newly acquired vehicle clause.  (Doc. No. 20 at 10-11.)  Although Plaintiff acknowledges the Insurance Commissioner's statement in Sackett II that "the mechanism by which vehicles generally are added to existing policies is via 'newly acquired vehicle clauses,'" 940 A.2d at 331, Plaintiff argues that the operation of these clauses to extend coverage under car insurance policies is relatively rare, and in most instances, the clauses are never triggered.  (Doc. No. 20 at 10.)  Instead, she refers to these clauses as "safety nets" that are simply meant to avoid a temporary gap in coverage.  (Id. at 8.)  According to Plaintiff, once the insured notifies the insurer about the new car, it is added to the policy by an endorsement or the issuance of an Amended Declarations Page, and the newly acquired vehicle clause ceases to operate.  (Id.)  Plaintiff asserts that this scenario is exactly what happened in her case.  She claims that the Volvo was added to her existing policy on July 20, 2007 by way of Amended Auto Policy Declarations.[13]  (Id. at 10.)  She says that this occurred at the same time she bought the car, and therefore, the newly acquired vehicle clause was never triggered, rendering Sackett II inapplicable.  (Id. at 10-11; Doc. No. 20-5, Ex. E.)

---

[13] The Amended Auto Policy Declarations is simply a document which contains all the relevant insurance information and lists the newly added car.  (Doc. No. 20-2, Ex. B.)

Another court in this District recently rejected claims that were identical to Plaintiff's argument here. In Seiple v. Progressive N. Ins. Co., Seiple alleged that his insurer, Progressive, wrongfully denied him stacked UM/UIM motorist benefits after he was involved in a motorcycle accident. 954 F. Supp. 2d 352, 353 (E.D. Pa. 2013), aff'd, No. 13-3213, 2014 WL 2611357 (3d Cir. June 12, 2014). Like Allstate here, Progressive argued that Seiple's motorcycles had been added to his insurance policy via its after acquired vehicle clause. Id. Therefore, Pennsylvania's statutory requirement that insurers provide a new opportunity to waive stacked insurance with each "purchase" of new coverage had not been triggered. Id. In an attempt to eschew application of Sackett II, Seiple argued that he was entitled to stacked coverage under Sackett I, because the revised declaration page that Progressive issued to him was the same as an endorsement. Id. at 358-59. The district court rejected this argument for various reasons, and on appeal, in a non-precedential Opinion, the Third Circuit explained:

> We now turn to Seiple's contention that the additional vehicles were added to his policy by way of an endorsement, rather than the after-acquired-vehicle clause. Seiple specifically argues that new vehicles are customarily added to an existing policy via an endorsement, which is demonstrated by the issuance of an Amended Declarations Page. According to Seiple, vehicles added by endorsement are governed by another case, [Sackett III], which he claims stands for the proposition that all vehicles added by endorsement require new stacking waivers. We disagree.
>
> "According to Pennsylvania's Insurance Commissioner, the mechanism by which vehicles generally are added to existing policies is via 'newly acquired vehicle clauses.'" State Auto Property & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 88 n. 3 (3d Cir. 2009) (citing Sackett II, 940 A.2d at 331, 333 n. 4 (affording substantial deference to the Pennsylvania Insurance Commissioner's interpretation in stacking cases)). Seiple offers no support for his contention that his vehicles were added by endorsement beyond his contention that the Pennsylvania Insurance Commissioner was incorrect in its conclusion. As the District Court stated, we are in no position to "determine whether the Commissioner was mistaken . . . and cannot ignore Sackett II just on Seiple's say-so."

Seiple v. Progressive N. Ins. Co., No. 13-3213, 2014 WL 2611357, *3 (3d Cir. June 12, 2014), reh'g denied (3d Cir. July 15, 2014).

As both the district court and the Third Circuit noted, Sackett III did not create a per se rule that "vehicles added by endorsement require new stacking waivers without regard to the language in the after-acquired-vehicle clause." Seiple, 2014 WL 2611357 at *4. See also Seiple, 954 F. Supp. 2d at 359 ("Nowhere does Sackett III establish a per se rule about endorsements."). Instead, Sackett II makes clear that the relevant question is whether the car was added to the policy via a newly acquired vehicle clause.

In this case, the newly acquired vehicle clause states that:

> An additional four wheel private passenger auto or utility auto you become the owner of during the policy period . . . will be covered if we insure all other private passenger autos or utility autos you own. You must notify us within 30 days of acquiring the auto and pay any additional premium.

(Doc. No. 19-1, Ex. B, Allstate Fire and Casualty Insurance Company Auto Policy at 6.) Similar to this clause, the newly acquired vehicle clause in Seiple defined "covered motorcycle" to include "any additional motorcycle," which was further defined as:

> A motorcycle you become the owner of during the policy period that does not permanently replace a motorcycle shown on the declarations page if:
>
> a. We insure all other motorcycles you own;
>
> b. the additional motorcycle is not covered by any other insurance policy;
>
> c. you notify us within 30 days of becoming the owner of the additional motorcycle; and
>
> d. you pay any additional premium due.
>
> Any additional motorcycle, including an off-road vehicle, will have the broadest coverage we provide for any motorcycle shown on the declarations page. If you ask us to insure an additional motorcycle more than 30 days after you become the owner, any coverage we provide will begin at the time you request coverage.

Seiple, 954 F. Supp. 2d at 356.  After examining this clause, the district court in Seiple found that its clear terms operated to guarantee that any new motorcycle acquired during the policy period would automatically be covered by the policy, provided that it was not already covered elsewhere and that Seiple paid additional premiums.  Id.  The same is true here.

As the Insurance Commissioner explained to the Pennsylvania Supreme Court in Sackett II, newly acquired vehicle clauses apply insurance coverage "automatically upon acquisition, subject to various conditions, including a requirement of timely subsequent notice to the insurer." 940 A.2d at 331.  Furthermore, just like the applicable newly acquired vehicle clause in Seiple, the plain language of the clause in Plaintiff's policy applies to all automobiles acquired during the policy period.  The clause makes explicit that any new auto that Plaintiff acquired during this time would be covered under the policy, provided that the car was not already covered elsewhere and that Plaintiff provided notice to Allstate and paid additional premiums.[14]

Finally, Plaintiff's contention that the Volvo was added to her policy when Allstate issued the Amended Declarations Page is unpersuasive.  Plaintiff contends that the Amended Declarations Page is an endorsement.  Like the plaintiff in Seiple, Plaintiff offers little to support her claim that the Volvo was added to her policy by way of an endorsement, rather than a newly acquired vehicle clause.  She simply cites to non-binding authority and suggests that the Pennsylvania Insurance Commissioner's explanation was incorrect.  The Supreme Court afforded "substantial deference" to the Commissioner's interpretation, and as the district court explained in Seiple, it is not this Court's place to determine whether that interpretation is correct

---

[14] In Sackett II, by way of an example, the Pennsylvania Supreme Court pointed to a similar clause in Satterfield, supra note 10, explaining that this type of clause would not trigger the need for a new stacking waiver.  See also Shipp v. Phoenix Ins. Co., 2012 PA Super 167 (Aug. 14, 2012) (holding that because the coverage under the newly acquired vehicle clause was continuous and subject only to a notice requirement, a new stacking waiver was not required).

or not. 954 F. Supp. 2d at 358. For the reasons set forth above, the Court finds that Plaintiff's Volvo was added to her existing policy via the newly acquired vehicle clause.

2. **Plaintiff is Not Entitled to Stacked Benefits Because the Newly Acquired Vehicle Clause is Continuous in Nature**

Having determined that the Volvo was automatically added to Plaintiff's existing policy by operation of the newly acquired vehicle clause, the Court will now consider the language of the clause itself. As quoted above, Sackett II explained that:

> [W]here coverage under an after-acquired-vehicle clause is expressly made finite by the terms of the policy, Sackett I controls and requires the execution of a new UM/UIM stacking waiver upon the expiration of the automatic coverage in order for the unstacked coverage option to continue in effect subsequent to such expiration.

940 A.2d at 334 (internal citation omitted). In contrast, where coverage is continuous in nature, a new stacking waiver is not needed. Again, Seiple is instructive here. Analyzing the language of the newly acquired vehicle clause in that case, the Third Circuit concluded:

> Pursuant to this provision, any new motorcycle acquired by an insured during the policy period is automatically covered by the policy, so long as the insured pays any additional premiums and the additional motorcycle is not already covered. The 30-day notification period operates only to determine when coverage for the newly-acquired vehicle will begin. By its terms, this provision is continuous rather than finite. See Sackett II, 940 A.2d at 334 ("To the degree that coverage under a particular after-acquired-vehicle provision continues in effect throughout the existing policy period, subject only to conditions subsequent such as notice and the payment of premiums, . . . Sackett I should not disturb the effect of an initial . . . stacking waiver."). We, therefore, agree with the District Court's conclusion that the after-acquired-vehicle clause at issue is continuous, rather than finite in nature.

Seiple, 2014 WL 2611357 at *3.

As mentioned above, pursuant to the applicable newly acquired vehicle clause here, any new auto acquired by Plaintiff during the policy period would be automatically covered by the policy, so long as Plaintiff paid additional premiums and the additional auto was not already covered by other insurance. The clause explicitly states:

16

> An additional four wheel private passenger auto or utility auto you become the owner of during the policy period . . . will be covered if we insure all other private passenger autos or utility autos you own. You must notify us within 30 days of acquiring the auto and pay any additional premium.

(Doc. No. 19-1, Ex. B, Allstate Fire and Casualty Insurance Company Auto Policy at 6.)  Without setting a limit on how long coverage will apply, the provision, by its terms, is continuous rather than finite.  Therefore, under Sackett II, the extension of coverage to the Volvo under the newly acquired vehicle policy was not a new "purchase" of coverage for purposes of Section 1738(c), and thus, did not trigger an obligation on Allstate's part to obtain a new or supplemental UM/UIM stacking waiver.  Because the initial stacking waiver applies, Plaintiff is not entitled to stacked benefits and is limited to recovering $25,000, which represents coverage for one car only.

## V. CONCLUSION

For the foregoing reasons, Allstate's Motion for Summary Judgment will be granted.  An appropriate Order follows.